# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **LAWRENCE BRUCE** | **CIVIL ACTION** |
| **VERSUS** | **NO. 13-6435** |
| **N. BURL CAIN, WARDEN** | **SECTION "C" (2)** |

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. § § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 cases. Upon review of the entire record, I have determined that a federal evidentiary hearing is unnecessary.[1] For the following reasons, I recommend that the instant petition for habeas corpus relief be **DENIED** and **DISMISSED WITH PREJUDICE**.

## I.    STATE COURT PROCEDURAL BACKGROUND

The petitioner, Lawrence Bruce, is a convicted inmate currently incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[2]  On February 11, 2009, Bruce

---

[1] Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination.  Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).

[2] Rec. Doc. No. 3.

was charged by bill of information in Jefferson Parish with one count of armed robbery in violation of LSA-R.S. 14:64.[3] The Louisiana Fifth Circuit Court of Appeal summarized the facts of the case as determined at trial as follows:

> On January 10, 2009, at approximately 9:00 p.m., Deputy Mark Monson of the Jefferson Parish Sheriff's Office received a call regarding an armed robbery at 1308 Bolo Court, Apartment #3, in Bridge City, Louisiana. Deputy Monson met with and obtained a written statement from the victim, Adadin Caraballo, who advised that he had been robbed in his apartment at knifepoint. Mr. Caraballo identified the robber as a man named "Tony." Deputy Monson, who frequently patrolled the area, had knowledge that defendant regularly used the name "Tony."
>
> Mr. Caraballo advised Deputy Monson that the defendant entered his apartment and pulled out a medium-sized kitchen knife. Defendant approached Mr. Caraballo, who stumbled backwards in fear. At the same moment, defendant grabbed a gold Figaro chain with a Jesus medallion from around Mr. Caraballo's neck. Mr. Caraballo testified that although he did not know defendant he had seen defendant around the neighborhood and had heard people address him as "Tony." Mr. Caraballo testified that he had paid approximately $1,600 for the chain and medallion. After defendant left the apartment, Mr. Caraballo and his roommates attempted to find defendant and recover the chain. When they were unsuccessful, Mr. Caraballo reported the robbery to the police.
>
> The following day, Deputy Monson compiled a photographic lineup that included defendant's picture. That same day, Mr. Caraballo positively identified defendant as the person who robbed him. Defendant was subsequently charged with armed robbery.

State v. Bruce, 54 So.3d 87, 89-90 (La. App. 5th Cir. 2010); State Record Volume 3 of 4, Louisiana Fifth Circuit Court of Appeal Opinion, 10-KA-121, pages 3-4, November 9, 2010.

On February 12, 2009, Bruce plead not guilty to the charges, and the court appointed an attorney to represent him.[4] Thereafter, Bruce filed numerous pre-trial

---

[3] St. Rec. Vol. 2 of 4, Bill of Information, 2/11/09; Bruce had filed a Motion for Preliminary Examination on January 12, 2009. St. Rec. Vol. 2 of 4, Motion for Preliminary Examination, 1/27/09.

[4] St. Rec. Vol. 2 of 4, Arraignment, 2/12/09; Request for Appointment of Counsel, p. 12, 2/12/09.

motions, including a Motion to Suppress Identification,[5] which the trial court denied on April 2, 2007.[6] Bruce was then tried before a jury on June 3, 2009, and found guilty of one count of armed robbery.[7] After the verdict, Bruce filed a Motion in Arrest of Judgment and Alternatively Motion for a New Trial, claiming that the evidence did not support an armed robbery conviction and that the State failed to prove beyond a reasonable doubt that he was armed with a dangerous weapon or stole anything of value.[8] The trial court denied the motion on June 17, 2009, and, after delays were waived, sentenced Bruce to a 75-year prison term at hard labor without benefit of parole, probation, or suspension of sentence.[9]

Bruce then filed a Motion to Amend Sentence, and the State filed a Multiple Offender Bill of Information to which Bruce plead not guilty.[10] On August 20, 2009, during the multiple bill hearing, the court denied Bruce's Motion to Amend Sentence,

---

[5] St. Rec. Vol 2 of 4, Omnibus Motions and Order for Pre-Trial Motions, pp. 16-32.

[6] St. Rec. Vol. 2 of 4, Motion Hearing Minutes, p. 3, 4/02/09; Transcript of April 2, 2009 hearing.

[7] St. Rec. Vol. 2 of 4, 2nd Verdict Form, p. 51, 6/3/09; Trial Transcript, pp. 85-153, 6/3/09.

[8] St. Rec. Vol. 2 of 4, Motion in Arrest of Judgement and Alternatively Motion for a New Trial.

[9] St. Rec. Vol. 2 of 4, Sentencing Minutes, pg. 55, 6/17/09.

[10] Id., Multiple Offender Bill, pp. 57-58.

over counsel's objection.[11]  The court then adjudicated Bruce a second felony offender.[12]

Consequently, the original sentence was vacated and Bruce was re-sentenced to 100

years in prison at hard labor, 99 years of which would be served without benefit of

parole, probation, or suspension of sentence, giving credit for all time served.[13]

Thereafter, Bruce filed a direct appeal to the Louisiana Fifth Circuit claiming:

(1) He was adjudicated an habitual offender following a hearing at which he was not

afforded fundamental due process.  (2) The evidence was insufficient to support the

verdict.  (3) The trial court imposed an excessive sentence.[14]  On November 9, 2010, the

Louisiana Fifth Circuit affirmed his conviction and sentence, finding no merit in any of

the three claims.[15]

Bruce then filed an Application for a Writ of Certiorari in the Louisiana Supreme

Court postmarked December 6, 2010, asserting:  (1) The trial court erred in finding him

an habitual offender following a hearing in which he was not afforded due process.

(2) The evidence was insufficient to support the jury verdict.  (3) His due process rights

---

[11] St. Rec. Vol. 2 of 4, Multiple Bill Hearing Minutes, p. 65, 8/20/09; Transcript of Multiple Bill Hearing, pp. 177-178.

[12] Id.

[13] Id.

[14] St. Rec. Vol. 2 of 4, Appeal from the Twenty-Fourth Judicial District Court, Original Brief on Behalf of the Appellant, pp. 5-14.

[15] Bruce, 54 So.3d at 98; St. Rec. Vol. 3 of 4, 5th Cir. Opinion, 10-KA-121, 11/9/10 (remanding with instructions to fix a harmless discrepancy in the record as to the judge's instructions to Bruce on the prescriptive period for seeking post-conviction relief).

were violated during his trial.[16]  The Louisiana Supreme Court denied the writ application on April 21, 2011.[17]  Bruce then filed for a "Title XI Writ of Habeas Corpus Pursuant to Art. 361 & 362, Subject Matter Jurisdiction," asserting that he was denied the right to a preliminary examination and that the trial court lacked subject matter jurisdiction over his case.[18]  The state trial court denied the application.[19]

On January 15, 2012, Bruce filed an Application for Post-Conviction Relief asserting the following four claims of ineffective counsel:  (1) failure effectively to impeach the victim's testimony with evidence of a prior inconsistent statement; (2) failure to impeach the victim's testimony with evidence of a prior felony conviction; (3) erroneous advice and trial strategy; and (4) failure to object to denial of his right to a preliminary examination or to file an application for writ of habeas corpus.[20]  After the State filed an opposition, the trial court denied the application on September 15, 2012,

---

[16] St. Rec. Vol. 3 of 4, Brief on Behalf of Appellant, 12/3/10.

[17] St. Rec. Vol. 1 of 4, 4/29/11.

[18] St. Rec. Vol. 1 of 4, Title IX Writ of Habeas Corpus, 1/30/11.

[19] St. Rec. Vol. 1 of 4 Order February 28, 2011. Under the Louisiana Code of Criminal Procedure, habeas corpus is available to command persons to come before the court to state their authority for having a person in custody. LSA - C.Cr.P.Art. 351. The Official Revision Comments from 1966 state: "Habeas corpus is not the proper procedural device for petitioners who may file applications for post-conviction relief. Essentially, habeas corpus deals with preconviction complaints concerning custody." In this case, the state trial court denied relief because Bruce could file an application for post-conviction relief.

[20] St. Rec. Vol. 3 of 4, Application for Post Conviction Relief, 1/15/12; State's Response in Opposition to Post Conviction Relief.

reasoning that Bruce failed to show any prejudice or performance deficiency under Strickland v. Washington, 466 U.S. 668 (1984).[21]

In October 2012, Bruce filed an "Appeal for Supervisory Writs Application" with the Louisiana Fifth Circuit alleging, in addition to his initial claims, that the trial court abused its discretion when it incorrectly denied his Application for Post-Conviction Relief without an evidentiary hearing.[22] The court denied the application on January 17, 2013.[23] Subsequently, Bruce filed an Application for Writ of Certiorari and/or Review in the Louisiana Supreme Court postmarked February 19, 2013, asserting four claims of ineffective counsel: (1) failure effectively to impeach the victim's testimony with evidence of a prior inconsistent statement; (2) failure to impeach the victim's testimony with evidence of a prior felony conviction; (3) erroneous advice and trial strategy; and (4) failure to object to denial of his right to a preliminary examination and file an application for writ of habeas corpus.[24] The Louisiana Supreme Court denied the application on July 31, 2013.[25]

---

[21] St. Rec. Vol. 3 of 4, Order denying Application for Post-Conviction Relief, 9/15/12.

[22] St. Rec. Vol. 3 of 4, Application for Remedial and Supervisory Writs.

[23] St. Rec. Vol. 3 of 4, Appeal for Supervisory Writs; Vol. 1 of 4, Writ denied, 1/17/13.

[24] St. Rec. Vol. 3 of 4, Brief of Behalf of Appellant.

[25] St. Rev. Vol. 3 of 4, Application for Writ of Certiorari, 2/21/13; Bruce v. Louisiana, 118 So.3d 1115, 1115 (2013); Vol. 1 of 4.

## II.   FEDERAL HABEAS PETITION

On November 15, 2013, Bruce filed this federal habeas corpus petition in which he asserts four ineffective assistance of counsel claims: (1) failure effectively to impeach the victim with a prior inconsistent statement and (2) with a prior felony conviction; (3) erroneous advice and trial strategy; and (4) failure to object to the lack of probable cause to support the charge and to file an application for habeas corpus.[26]  In addition, Bruce asserts a fifth claim that he was denied due process in his multiple offender proceedings at which his counsel provided ineffective assistance.  Finally, he asserts a sixth claim that there was insufficient evidence to support his armed robbery conviction.[27]  In its response in opposition to Bruce's petition, the State concedes both the timely filing of the petition and exhaustion of state court remedies.[28]  The State argues that the denial of relief as to Bruce's ineffective counsel and insufficient evidence claims was not contrary to or an unreasonable application of United States Supreme Court precedent; and that the trial court was correct in finding Bruce a multiple offender.[29]

---

[26] Rec. Doc. No. 3.

[27] Id.

[28] Rec. Doc. No. 10.

[29] Id.

III.     ASSISTANCE OF COUNSEL (CLAIMS NOS. 1-4)

Bruce first alleges that his counsel provided ineffective assistance in that she failed to impeach the victim's testimony with evidence of a prior inconsistent statement and a prior felony conviction.  Bruce claims that by not impeaching the victim, his attorney missed opportunities to cast doubt on the victim's story and attack the victim's credibility.  Bruce further argues that his counsel gave him erroneous advice as to his sentencing exposure; failed to use a reasonable trial strategy, specifically relating to advising Bruce not to testify; and failed to object to denial of a preliminary examination, obtain a judicial determination of probable cause and file an application for writ of habeas corpus pursuant to La. Code Crim. P. art. 361.

Bruce asserted these same arguments in his state court application for post-conviction relief.  The state trial court denied relief on the application, without holding an evidentiary hearing, finding no merit in any of the claims under Strickland v. Washington, 466 U.S. 668 (1984), and related case law.  Both the Louisiana Fifth Circuit and the Louisiana Supreme Court denied Bruce's subsequent writ applications concerning the ineffective assistance claims, with the state appellate court addressing the claims in a detailed reasoned opinion.[30]

---

[30] State Record Vol. 1 of 4, State ex rel. Bruce v. Cain, Case No. 12-825 (La. App. 5th Cir. Jan. 17, 2013).

The issue of ineffective assistance of counsel is a mixed question of law and fact. Clark v. Thaler, 673 F.3d 410, 416 (5th Cir. 2012); Woodfox v. Cain, 609 F.3d 774, 789 (5th Cir. 2010). Thus, the question before this court is whether the state courts' denial of relief was contrary to or an unreasonable application of United States Supreme Court precedent.

As correctly noted by the state courts, the standard for judging performance of counsel was established by the United States Supreme Court in Strickland, in which the Supreme Court established a two-part test for evaluating claims of ineffective assistance of counsel, requiring petitioner to prove both deficient performance and resulting prejudice. Strickland, 466 U.S. at 697. The Supreme Court first held that "the defendant must show that counsel's representation fell below an objective standard of reasonableness." Id. at 687-88. Second, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694; accord United States v. Kimler, 167 F.3d 889, 893 (5th Cir. 1999).

In deciding ineffective assistance of counsel claims, this court need not address both prongs of the conjunctive Strickland standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test. Kimler, 167 F.3d at 893. A habeas corpus petitioner "need not show that 'counsel's deficient conduct more likely than not altered the outcome in the case.' . . . But it is not enough under

Strickland, 'that the errors had some conceivable effect on the outcome of the proceeding.'" Motley v. Collins, 18 F.3d 1223, 1226 (5th Cir. 1994) (quoting Strickland, 466 U.S. at 693) (citation omitted). The Strickland standard requires a **"substantial" likelihood** of a different result, not just a conceivable one. Harrington v. Richter, 562 U.S. 86, 131 S. Ct. 770, 792 (2011).

On federal habeas review, scrutiny of counsel's performance "must be highly deferential," and the court will "indulge a strong presumption that strategic or tactical decisions made after an adequate investigation fall within the wide range of objectively reasonable professional assistance." Moore v. Johnson, 194 F.3d 586, 591 (5th Cir. 1999) (citing Strickland, 466 U.S. at 689-90). In assessing counsel's performance, a federal habeas court must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time of trial. Strickland, 466 U.S. at 689; Neal v. Puckett, 286 F.3d at 236-37; Clark v. Johnson, 227 F.3d 273, 282-83 (5th Cir. 2000).

On habeas review, the United States Supreme Court has recently clarified that, under Strickland, "[t]he question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." Harrington, 131 S. Ct. at 788. The Harrington

Court went on to recognize the high level of deference owed to a state court's findings under Strickland in light of the AEDPA:

> The standards created by Strickland and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is doubly so. The Strickland standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

Id.

Thus, scrutiny of counsel's performance under § 2254(d) is "'doubly deferential.'" Cullen v. Pinholster, 131 S. Ct. 1388, 1403 (2011) (quoting Knowles v. Mirzayance, 556 U.S. 111, 123 (2009)). This court must therefore apply the "strong presumption" that counsel's strategy and defense tactics fall "within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 690. Federal courts have consistently recognized that tactical decisions when supported by the circumstances are objectively reasonable and do not amount to unconstitutionally deficient performance. Lamb v. Johnson, 179 F.3d 352, 358 (5th Cir. 1999) (citing Rector v. Johnson, 120 F.3d 551, 564 (5th Cir. 1997); Mann v. Scott, 41 F.3d 968, 983-84 (5th Cir. 1994)). Federal habeas courts presume that trial strategy is objectively reasonable unless clearly proven otherwise. Strickland, 466 U.S. at 689; Moore, 194 F.3d at 591. The burden is on petitioner to demonstrate that counsel's strategy was constitutionally deficient. Id.

As discussed below, Bruce's ineffective assistance of counsel claims fail to establish either component of the <u>Strickland</u> standard. As to the performance prong of the <u>Strickland</u> test, defense counsel's decision to call or not call a witness is a matter of trial strategy and is not <u>per se</u> evidence of ineffective assistance. <u>State v. Washington</u>, 788 So. 2d 596 (La. App. 5th Cir. 2001). As to the prejudice prong of the <u>Strickland</u> test, Bruce has failed to show how questioning the victim as to his statement inconsistencies could reasonably have changed the outcome of the case. Bruce has also failed to show how questioning the victim as to his old marijuana conviction a second time, after he had already been questioned about it by the State, would have changed the outcome of the case. Bruce's minimum prison sentence exposure was in fact 49.5 years, and he has produced no evidence to show that he was misinformed of his maximum possible sentence or that he rejected a plea bargain for a lesser sentence. Bruce has failed to show how the alleged failure of his counsel to seek a preliminary examination or file an application for writ of habeas corpus created a reasonable probability that the outcome of the case would have been different.

A.    <u>Victim Testimony Impeachment with Inconsistent Statement</u>

Bruce alleges that his attorney failed to impeach the victim, Adadin Caraballo, with evidence of prior inconsistent statements. Bruce points first to a written statement made by Caraballo shortly after the robbery in which he wrote, "he pulled a knife and took a gold chain from my neck." Bruce then references three of the victim's statements

made at trial in which he states that he dropped the chain and ran away. In one, Caraballo stated, "He just went look – he went like that (indicating), pulled out a knife. I dropped my chain and I run away." In another, he states, "I dropped my chain, I fall back and I just run, right in the doorway." In a third statement at trial, Caraballo testified, "He looked like this, then he just went like down grabbed the chain and run away."

Bruce claims the three responses demonstrate that the gold chain was in the victim's hands and not on his neck. Bruce alleges that if his counsel had impeached the victim's testimony with the prior written statement, serious doubt would have been cast on the victim's allegations of robbery and supported an argument that the victim and Bruce were acquaintances, that Bruce was in the apartment to buy drugs, and that the victim identified Bruce as the robber to retaliate for a botched drug deal.

A decision whether and, if so, how to impeach a witness falls within the purview of counsel's trial strategy. On federal habeas corpus review, "[a] conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." Garland v. Maggio, 717 F.2d 199 (5th Cir.1983); see also Pape v. Thaler, 645 F.3d 281 (5th Cir. 2011). "'Failure to present [evidence does] not constitute "deficient" performance within the meaning of Strickland if [counsel] could have concluded, for tactical reasons, that attempting to present such evidence would be

unwise.'" <u>Williams v. Cockrell</u>, 31 F. App'x 832, 2002 WL 180359, at *3 (5th Cir. Jan. 4, 2002) (quoting <u>Williams v. Cain</u>, 125 F.3d 269, 278 (5th Cir. 1997)).

At trial, Bruce's attorney questioned the victim repeatedly about whether he had ever seen Bruce around the neighborhood.[31] At the very beginning of her cross-examination she asked the victim, " Do you know Mr. Bruce," and she proceeded to ask the victim, "Had you ever had any drinks with him?"[32]  In addition, defense counsel questioned the victim over why his door was unlocked in a high crime area and whether he had ever seen any drug deals.[33]

Bruce has not shown that his trial counsel's decision not to attempt to impeach the victim with the prior statement that the chain was on his neck was objectively unreasonable or that it had a demonstrably negative impact on the verdict.  Defense counsel spent a large portion of her cross-examination of Caraballo on whether he knew Bruce.  She asked him why his door was unlocked and inquired about his knowledge of local crime and drug deals.  Counsel's actions at trial show a strenuous effort to examine the relationship between Bruce and the victim and explore the victim's familiarity with drugs.  Counsel's decision not to question the victim directly about his prior statement was a strategic choice and is not deficient performance merely because the verdict

---

[31] St. Rec. Vol. 2 of 4, Trial Transcript, 119-122, 6/3/09.

[32] <u>Id.</u> at 119.

[33] <u>Id.</u> at 120.

ultimately was unsuccessful. Martinez v. Dretke, 99 F. App'x 538, 543 (5th Cir. 2004) ("[An] unsuccessful strategy does not necessarily indicate constitutionally deficient counsel."). Bruce fails to show how a failure to impeach the victim on this point was constitutionally deficient performance when counsel extensively questioned the victim over his relationship with Bruce and his familiarity with drug deals.

Bruce fails to establish how questioning the victim over his prior statement on whether or not the chain was in his hand or around his neck, could reasonably lead to the conclusion that the victim was expecting him that day or that the victim and Bruce had a relationship in which he regularly bought drugs for the victim. Even assuming that impeaching the victim could establish that the gold chain was in Caraballo's hands and not around his neck, Bruce fails to establish prejudice. The discrepancy was inconsequential and of little value to the overall defense. Caraballo did not need to have physical possession of the chain for the jury to find Bruce guilty of armed robbery. See State v. Thompson, 943 So. 2d 621, 625 n.9 (La. App. 3d Cir. 2006) ("[An] armed robbery may occur where property taken is not in actual contact with the victim."). Bruce's argument that impeaching the victim would have led the jury to find that Bruce and Caraballo were acquaintances and that Caraballo initiated this suit in retaliation for a botched drug deal is conclusory and speculative. Thus, Bruce has not established that the state courts' denial of relief was contrary to or an unreasonable application of Strickland. He is not entitled to relief on this claim.

B.    Victim Testimony Impeachment with Prior Felony Conviction

Bruce alleges that his attorney failed to impeach the victim with evidence of a prior felony conviction on a marijuana charge. He argues that the evidence would have shown the victim's propensity for using drugs, from which he claims the jury could have inferred that the victim's drug use had somehow intensified to include crack cocaine. Bruce asserts generally that the evidence would have shown the jury there was not a robbery, but instead a drug deal gone wrong.

The state court record establishes that the fact of the victim's prior marijuana conviction was revealed to the jury at trial in the victim's own testimony and was therefore available to the jury to take into consideration in weighing the credibility and any other impact that fact might have had at trial. On direct examination, the State's attorney questioned Caraballo himself concerning his prior drug conviction.

> THE STATE: Okay. You've got a drug conviction?
> CARABALLO: I did pay a fine for a marijuana charge.
> THE STATE: Okay. And when was that?
> CARABALLO: That was in the 80s.
> THE STATE: In 1980s?
> CARABALLO: Yeah.
> THE STATE: Okay. Do you have any other convictions?
> CARABALLO: No.[34]

Defense counsel's decision not to question the victim further as to his prior 30-year-old conviction falls well within the purview of trial strategy. Bruce has provided no reason to conclude that his attorney's failure to revisit a question the victim had

---

[34] Id. at 113-114.

already answered would have created reasonable doubt in the minds of the jury as to the victim's credibility or otherwise altered the outcome of the case. Additional questioning of the victim about his decades old conviction would therefore have been redundant and cumulative and would only have provided an opportunity for the victim to stress his clean record during the thirty years since that conviction. Bruce's assertion that impeaching the victim would have led the jury to see the whole incident as merely a drug deal gone wrong is wholly conclusory and wildly speculative. Bruce fails to show there was a substantial likelihood of a different result or any other kind of prejudice arising from his attorney's decision not to question Caraballo further about his marijuana conviction.

Under these circumstances, the state courts' rejection of this claim does not present an unreasonable application of federal constitutional law to the facts of this case. This claim does not merit federal habeas corpus relief.

C.     Trial Advice and Strategy

Bruce argues that his attorney failed to give proper advice and to use reasonable trial strategy. Specifically, Bruce claims his counsel gave him erroneous advice not to testify in his own defense. Bruce alleges his failure to testify forced the jury to rely solely on the victim's testimony and that he missed an opportunity to present evidence to the jury that he and the victim were acquaintances and that Bruce had run multiple errands for the victim to obtain cocaine.

On federal habeas review, "the decision whether to put a Defendant on the stand is a 'judgment call' which should not easily be condemned with the benefit of hindsight." United States v. Garcia, 762 F.2d 1222, 1226 (5th Cir. 1985) (citing Hollenbeck v. Estelle, 672 F.2d 451, 454 (5th Cir. 1982)). However, a defendant's right to testify on his own behalf "may not be waived by counsel as a matter of trial strategy." United States v. Mullins, 315 F.3d 449, 454 (5th Cir. 2002). When the record shows that the defendant knew of his right to testify and wanted to testify, but simply acquiesced to his attorney's advice, the "only inquiry is whether that advice was sound trial strategy." Id. at 453-54.

Bruce claims his attorney advised him not to take the witness stand. He does not claim that his attorney denied him his right to testify over his own objections. Defense counsel's advice that Bruce not take the stand at trial was not unreasonable. Bruce had a history of past criminal convictions that would have been admissible to undermine his credibility with the jury if he had testified. In addition, his current arguments indicate that he intended to admit to the jury that he was an aider and abetter to the victim engaged in an illegal cocaine transaction. Defense counsel reasonably should have been concerned about how the jury would perceive Bruce and his version of the events, given this kind of criminal record and planned potentially harmful testimony.

Bruce presents no persuasive argument that the verdict would have been different if Bruce had testified. His claim that his testimony would have provided the jury an

opportunity to hear evidence about how he and the victim were acquaintances engaged together in cocaine use does not establish prejudice in the federal habeas corpus sense. It is wholly conclusory and speculative to assume the jury would have found Bruce more credible than the victim under these circumstances, and it is beyond the proper function of this court on habeas corpus review to assess the credibility of witnesses' statements, especially testimony that was never given.

Bruce also alleges his attorney gave him erroneous advice when she informed Bruce that he could only be sentenced to 49.5 years. Bruce claims he did not know that he could receive a maximum sentence of 99 years and that if he had known about his actual maximum prison exposure, he may have considered other options, such as a guilty plea in exchange for a lighter sentence.

Under Louisiana law, a person found guilty of armed robbery faces a possible sentence of ten (10) to 99 years in prison at hard labor. La. Rev. Stat. § 14:64(B). In addition, Louisiana law states, in relation to a second felony offender, that "if the second felony is such that upon a first conviction the offender would be punishable by imprisonment for any term less than his natural life, then the sentence to imprisonment shall be for a determinable term not less than one-half the longest term and not more than twice the longest term prescribed for a first conviction." Id. § 15:259.1(A)(1). Therefore, Bruce was in fact exposed to a sentencing period between 49.5 years and 198 years. The state courts denied relief on this claim, finding that Bruce's <u>minimum</u>

exposure was in fact 49.5 years in prison and that Bruce had offered no evidence that he was misinformed about his maximum sentencing or that he rejected any plea-bargain offer for a lesser sentence.[35]

Bruce has again failed to show in this court either that he received erroneous advice from his lawyer or that he was prejudiced by any alleged misinformation as to his possible prison sentence. His sentence was within the statutory range. His allegations about his own decision-making concerning plea-bargaining or proceeding to trial are speculative and self-serving. The state courts' rejection of Bruce's claim of erroneous advice and trial strategy does not present an unreasonable application of federal law to the facts of this case. This instant claim does not merit federal habeas corpus relief.

D.    <u>Preliminary Examination, Judicial Determination of Probable Cause and Failure to File Application for Writ of Habeas Corpus</u>

Bruce alleges that his attorney was ineffective because he was denied a preliminary examination and the probable cause affidavit prepared by Deputy Monson erroneously stated that the suspect grabbed the chain from around the victim's neck, when the victim later claimed the chain was in his hands, but his attorney failed to file an objection or an application for writ of habeas corpus pursuant to La. Code. Crim. P.

---

[35] St. Rec. Vol. 1 of 4. Application for Writs, No. 12- KH- 825, 1/17/13; Vol. 3 of 4. Denial of Application for Post-Conviction Relief, 9/19/12.

art. 361 to seek Bruce's release from illegal pretrial custody.[36] None of these arguments

supports federal habeas corpus relief in this case.

Louisiana courts have held that where the evidence does not establish probable

cause at a preliminary examination, the defendant will be released from custody or bail;

however, the State may still proceed with criminal charges against the individual. <u>State</u>

<u>v. Lewis</u>, 28 So. 3d 548, 555 (La. App. 4 Cir. 2009); <u>State v. Mayberry</u>, 457 So. 2d 880,

882 (La. App. 3 Cir. 1984). When no preliminary examination occurs, "the issue is moot

after conviction, at least in the absence of prejudice." <u>State v. Washington</u>, 363 So. 2d

509, 510 ( La. 1978). In Louisiana, a probable cause hearing is <u>not</u> indicated for a person

like Bruce who is arrested through the issuance of an arrest warrant. <u>State v. Hughart</u>,

801 So. 2d 388, 389 (La. App. 2d Cir. 2000) (discussing the hearing requirement under

La. Code Crim. P. art. 230.2 for those arrested with<u>out</u> a warrant).

The Fifth Circuit has recognized that there is no federal constitutional right to a

preliminary hearing. <u>Harris v. Estelle</u>, 487 F.2d 1293, 1296 (5th Cir. 1973); <u>Weary v.</u>

<u>Cain</u>, No. 10-1793, 2011 WL 7416509, at *11 (E.D. La. Apr. 21, 2011), <u>report &</u>

<u>recommendation adopted</u>, 2012 WL 601862 (E.D. La. Feb. 22, 2012). Federal law also

provides that "a person arrested pursuant to a warrant issued by a magistrate on a

_____

[36] Under the Louisiana Code of Criminal Procedure, habeas corpus is available to command persons to come before the court to state their authority for having a person in custody. La. Code Crim. P. art. 351. The 1966 Official Revision Comments state: "Habeas corpus is not the proper procedural device for petitioners who may file applications for post-conviction relief. Essentially, habeas corpus deals with pre-conviction complaints concerning custody."

showing of probable-cause is not <u>constitutionally</u> entitled to a separate judicial determination that there is probable cause to detain him pending trial." <u>Baker v. McCollan</u>, 443 U.S. 137, 143 (1979) (emphasis added). The probable cause determination made before issuance of an arrest or search warrant is sufficient to satisfy federal law. <u>See id.</u> ("[S]ince the probable cause standard for pretrial detention is the same as that for arrest, a person arrested pursuant to a warrant issued by a magistrate on a showing of probable-cause is not constitutionally entitled to a separate judicial determination that there is probable cause to detain him pending trial."); <u>accord</u> <u>Harris v. Payne</u>, 254 F. App'x 410, 418 (5th Cir. 2007).

The United States Constitution does not guarantee a preliminary hearing before a grand jury indictment is issued. <u>See</u> <u>Siwakowski v. Beto</u>, 455 F.2d 915, 916 (5th Cir. 1972) (per curiam) (holding referral of case to grand jury without an examining trial was constitutionally permissible). Instead, grand jury indictment constitutes a final determination of the existence of probable cause in a criminal case. <u>See</u> <u>Gerstein v. Pugh</u>, 420 U.S. 103, 117 n.19 (1975) (indictment "conclusively determines the existence of probable cause and requires issuance of an arrest warrant without further inquiry"); <u>In re Grand Jury Subpoena Dated Dec. 17, 1996</u>, 148 F.3d 487, 493 (5th Cir. 1998) ("In returning . . . an indictment a grand jury indicates that it has found probable cause to believe that a criminal offense has occurred.").

The state court record shows that an attorney from the Public Defender's Office filed a motion for a preliminary examination on Bruce's behalf in January 2009.[37] Thereafter, Bruce's assigned attorney, filed a second motion for a preliminary examination on February 18, 2009.[38] However, the record does not reflect that a preliminary examination ever occurred.

Bruce was initially taken into custody on January 11, 2009, by a Jefferson Parish deputy on routine patrol who spotted Bruce behind a dumpster at 3:40 a.m. and discovered that Bruce had two outstanding attachments issued in Jefferson Parish.[39] Deputy Monson testified at trial that based on the robbery victim's statements, his knowledge of Bruce and the area, and the victim's positive identification of Bruce as the robber, Bruce became a suspect in the case.[40] The state court record establishes that on January 12, 2009, a judge of the state court, upon finding probable cause based on Deputy Monson's affidavit, issued an arrest warrant charging Bruce with armed robbery.[41] About one month later, Bruce was charged by bill of information with armed robbery.[42]

---

[37] St. Rec. Vol. 2 of 4, Motion for Preliminary Examination, p. 1.

[38] St. Rec. Vol. 2 of 4, Omnibus Motions and Order for Pre-Trial Motions, pp. 16-17, 20, 2/18/09.

[39] Id., Trial Transcript (Spears), p. 90, 7/3/09.

[40] Id., Trial Transcript (Monson), p. 103-108, 7/2/09.

[41] Id., Jefferson Parish Sheriff's Office Arrest Report and Probable Cause Affidavit, imaged 1/14/09.

[42] Id., Bill of Information, 2/11/09.

Under these circumstances, Bruce fails to show either deficient performance or prejudice arising from his attorney's failure to object to the lack of a preliminary hearing. Defense counsel in fact filed a motion for a preliminary examination. Having been arrested and charged with armed robbery based upon a warrant issued after a judge's probable cause finding, Bruce had no federal <u>constitutional</u> right to a preliminary hearing, which became moot in any event under state procedural law when the bill of information was filed shortly after his arrest. Even assuming that Bruce might have been temporarily released absent a showing of probable cause at a preliminary hearing, a wholly speculative supposition, the State still could have proceeded against him with the charge of armed robbery. Bruce's claims that Deputy Monson's probable cause affidavit showed a reckless disregard for the truth are unsupported by the evidence in the case. The victim's statements at trial are immaterial to the basis for Deputy Monson's probable cause affidavit at the earlier time when the charges were lodged. Caraballo's statements, his positive identification and Deputy Monson's familiarity with Bruce and the area provided an adequate factual basis for the state judge's probable cause finding that Bruce was the person who robbed Caraballo.

Bruce also fails to show deficient performance or prejudice arising from his attorney's failure to file an application for a pretrial writ of habeas corpus pursuant to La. Code Crim. P. art 361. Bruce was initially arrested based upon outstanding warrants for his arrest in Jefferson Parish. He remained in custody after he was charged with the

armed robbery on the following day based upon an arrest warrant issued after a judge's probable cause finding. A bill of information charging the same armed robbery offense was filed within one month. These circumstances establish that there was ample probable cause to charge Bruce with the crime. Defense counsel's performance was not constitutionally deficient because taking any of the actions that Bruce claims should have been taken would have been futile and meritless. See Clark v. Thaler, 673 F.3d 410, 429 (5th Cir. 2012) ("failure to assert a meritless objection cannot be grounds for a finding of deficient performance") (quoting Emery v. Johnson, 139 F.3d 191, 198 (5th Cir. 1997); Wood v. Quarterman, 503 F.3d 408, 413 (5th Cir. 2007) ("'[f]ailure to raise meritless objections is not ineffective lawyering; it is the very opposite.'") (quoting Clark v. Collins, 19 F.3d 959, 966 (5th Cir. 1994)); Green v. Johnson, 160 F.3d 1029, 1037 (5th Cir. 1998) (failure to make a frivolous objection is not deficient performance below an objective level of reasonableness). Bruce fails to show any reasonable probability that the result would have been different had his attorney objected to the lack of a preliminary examination or filed a writ of habeas corpus on these grounds.

The state court record in this case establishes that an arrest warrant was obtained charging Bruce with armed robbery based upon the affidavit of Deputy Monson and a probable cause finding signed by a judge of the state court in Jefferson Parish. Bruce was taken into custody and subsequently charged by bill of information. Thus, he was not entitled to a preliminary hearing, under either state or federal constitutional law. He

has failed to present a cognizable federal claim or establish that the denial of relief was contrary to the Supreme Court precedent cited above. Bruce is not entitled to federal habeas relief on this claim.

IV.    MULTIPLE OFFENDER ADJUDICATION (CLAIM NO. 5)

Bruce initially frames his claim concerning his habitual offender adjudication in terms of an alleged violation of his Due Process procedural and fundamental fairness rights.[43] His expanded argument, however, asserts that his counsel provided ineffective assistance at the multiple offender hearing when she "abandoned her role as counsel for Bruce and instead adopted the position of the State" by conceding the validity of a predicate felony offense that was used to sentence him as a multiple offender.[44] Neither aspect of Bruce's arguments related to the habitual offender adjudication provides any basis for federal habeas corpus relief.

A claim of this sort related to habitual offender proceedings presents a mixed question of law and fact for purposes of this court's federal habeas review. Taylor v. Day, No. 98-3190, 1999 WL 195515, at *3 (E.D. La. Apr. 6, 1999), aff'd, 213 F.3d 639 (5th Cir. 2000).

The same Strickland standards discussed above apply to the ineffective assistance of counsel aspect of this claim. Due process considerations include both procedural and

---

[43] Record Doc. No. 3 at p. 39 (Memorandum in Support at p. 20).

[44] Id. at pp. 42-43 (Memorandum in Support of Petition at pp. 23-24).

substantive components.  As to procedural due process, the court considers "whether there exists a liberty or property interest of which a person has been deprived, and if so we ask whether the procedures followed by the State were constitutionally sufficient." Swarthout v. Cooke, 562 U.S. 216, 131 S. Ct. 859, 861 (2011) (citing Ky. Dep't of Corr. v. Thompson, 490 U.S. 454, 460 (1989)).  As to substantive due process, the court considers whether the proceedings were fundamentally unfair.  Roberts v. Thaler, 681 F.3d 597, 611 (5th Cir. 2012) (quotation omitted) (a violation of the Due Process Clause of the Fourteenth Amendment occurs if the proceedings are so unduly prejudicial as to render them fundamentally unfair); Riggins v. Nevada, 504 U.S. 127, 149 (1992) (quotation omitted) (the Due Process Clause guarantees fundamental fairness in criminal proceedings).

Title 28 U.S.C. § 2241(d) "gives the United States district courts jurisdiction to entertain petitions for habeas relief only from persons who are 'in custody in violation of the Constitution or laws or treaties of the United States.'" Maleng v. Cook, 490 U.S. 488, 490 (1989) (quoting 28 U.S.C. § 2241(c)(3)) (emphasis added); 28 U.S.C. § 2254(a).  Thus, to be eligible for federal habeas corpus relief, a petitioner must be "in custody" as to the challenged conviction or sentence and must have exhausted his available state court remedies as to the convictions he challenges.  Dickerson v. Louisiana, 816 F.2d 220, 224 (5th Cir. 1987).

The United States Supreme Court has held in <u>Lackawanna County Dist. Attorney</u> <u>v. Coss</u>, 532 U.S. 394, 400-01 (2001), that federal habeas corpus relief is generally <u>un</u>available to a state prisoner, when the prisoner challenges a current sentence on the ground that it was enhanced based on an allegedly unconstitutional prior conviction for which the petitioner is no longer in custody. "[W]e hold that once a state conviction is no longer open to direct or collateral attack in its own right because the defendant failed to pursue those remedies while they were available (or because the defendant did so unsuccessfully), the conviction may be regarded as <u>conclusively</u> <u>valid</u> . . . . If that conviction is later used to enhance a criminal sentence, the defendant generally may <u>not</u> challenge the enhanced sentence through a petition under § 2254 on the ground that the prior conviction was unconstitutionally obtained." <u>Id.</u> at 403-04 (citation omitted) (emphasis added).

In <u>Lackawanna</u>, the Supreme Court recognized a single exception to this rule relating to Sixth Amendment claims of failure to appoint counsel. No such claim is made by Bruce in this case, and I am unaware of any exception to the rule that would apply to the claim he has asserted.[45]

---

[45]As explained by the Sixth Circuit in <u>Abdus-Samad v. Bell</u>, 420 F.3d 614, 630 (6th Cir. 2005), a three-justice plurality of the <u>Lackawanna</u> Court speculated that other exceptions to this rule of federal habeas non-reviewability might exist in other circumstances, including (1) where a state court, without justification, has refused to rule on a properly presented constitutional claim, and (2) where a defendant subsequently obtains compelling evidence of his actual innocence. These circumstances do not exist in Bruce's case.

Even if this court were to revisit Bruce's prior conviction despite the United States Supreme Court's admonishment that it is "regarded as conclusively valid," <u>Lackawanna</u>, 534 U.S. at 403, and which has been upheld in subsequent state court litigation, Bruce has offered nothing that establishes either that the procedures employed in his habitual offender proceedings were constitutionally deficient or that they were fundamentally unfair. Instead, the state court record establishes that he was properly given an enhanced sentence for his latest conviction in accordance with Louisiana's habitual offender laws. Bruce has not presented this court with a cognizable federal due process habeas claim in this regard.

To establish that a defendant is a habitual offender under La. Rev. Stat. § 15:529.1, the State is required to prove the existence of a prior felony conviction and that the defendant is the same person who was convicted of the prior felony. <u>State v. Shelton</u>, 621 So. 2d 769, 779 (La. 1993); <u>State v. Staggers</u>, 860 So. 2d 174, 180 (La. App. 5th Cir. 2003). Certified copies of court records evidencing prior convictions are sufficient to prove the prior conviction. <u>Id.</u> Independent proof, such as matching fingerprints and other vital information, is also required to show that the defendant is the same person identified in the prior records. <u>State v. Walker</u>, 795 So. 2d 459, 463 (La. App. 5th Cir. 2001).

The Louisiana Supreme Court has held that, upon presentation of sufficient proof of identity and prior convictions, the burden shifts to the defendant to challenge the validity of the predicate convictions:

> If the State meets this burden, the defendant has the burden to produce some affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of the plea. If the defendant is able to do this, then the burden of proving the constitutionality of the plea shifts to the State. The State will meet its burden of proof if it introduces a "perfect" transcript of the taking of the guilty plea, one which reflects a colloquy between judge and defendant wherein the defendant was informed of and specifically waived his right to trial by jury, his privilege against self-incrimination, and his right to confront his accusers. If the State introduces anything less than a "perfect" transcript, for example, a guilty plea form, a minute entry, an "imperfect" transcript, or any combination thereof, the judge then must weigh the evidence submitted by the defendant and by the State to determine whether the State has met its burden of proving that the defendant's prior guilty plea was informed and voluntary, and made with an articulated waiver of the three Boykin rights.

Shelton, 621 So. 2d at 779-80 (footnotes omitted).

In this instance, Bruce argues that the state court failed to consider and his attorney failed adequately to advocate that as part of his guilty plea to the prior 2007 conviction used to enhance his armed robbery sentence, Bruce was under the impression that he was then pleading only to a misdemeanor theft, rather than a felony burglary, and that his 2007 guilty plea was therefore invalid. The state appellate court fully considered Bruce's argument in this regard and rejected it.[46]

---

[46] State v. Bruce, 54 So.3d 87, 93-96 (La. App. 5th Cir. 2010).

On the morning of his multiple offender hearing, Bruce was in fact fingerprinted in open court in connection with the multiple bill filed in the instant armed robbery case.[47] The fingerprint analysis expert compared those fingerprints with the fingerprints in the certified records of Bruce's prior conviction.[48] Deputy Chad Pitfield, the State's expert in fingerprint identification, testified that he personally fingerprinted Bruce in court that day and reviewed the certified records of Bruce's prior conviction.[49] Deputy Pitfield specifically testified that, in his expert opinion, the fingerprints in the prior felony case matched Bruce's fingerprints taken before the hearing.[50] He detailed exactly how he compared the new prints to those in the prior records.[51] The court received and reviewed the State's evidence, including the new fingerprint card and the certified records of Bruce's prior guilty plea and conviction listed in the multiple bill.[52] State court Exhibit 2, the certified records of Bruce's prior conviction, included "the Boykin form, Waiver of Rights, and entry of a plea of guilty in that case, where the defendant was properly Boykinized; "advised of his rights to a trial by a jury or by the Court alone, to confront his accusers, and against self-incrimination; and that he was waving all of

---

[47] St. Rec. Vol. 2 of 4, Multiple Offender Hearing Transcript, pp. 4, 7, 8/20/09.

[48] Id. at pp. 9-10.

[49] Id., p. 11.

[50] Id., p. 11.

[51] Id., pp. 10-11.

[52] Id., pp. 11-12.

these rights. The Boykin form also states that it was a free and intelligent waiver of rights; and that Bruce was advised that if he was convicted of a subsequent offense, his guilty plea could be used against him to enhance him as a habitual offender."[53] The state trial court expressly found that Bruce had pled guilty in 2007 to <u>both</u> "felony burglary, and he pled to a theft."[54] The state appellate court affirmed this finding in its detailed opinion.[55]

The exchange at the habitual offender hearing upon which Bruce bases this claim was the following:

| | |
|---|---|
| MS. GUSTE: | Your Honor, excuse me. May I see the cert one more time to show my client? |
| THE COURT: | Yes. (Ms. Guste reviewing cert with her client.) |
| MS. GUSTE: | Your Honor, for the record, I've gone over this certification of the guilty plea in this particular case that is being used as a predicate offense in the multiple bill, and Mr. Bruce was under the impression that he had pled to a theft. I have reviewed this document with Mr. Bruce, again, today, and it is, in fact, a Boykin form, pleading to the simple burglary, which is a felony, which does have a sentence of zero to 12 years, and it is a felony, and I've explained that to Mr. Bruce. Mr. Bruce, do you understand that this is a felony that you have pled to in 2007? |
| MR. BRUCE: | No, at the time, I didn't, ma'am, because you told me that if I plead to it, that you'll break it down to a theft -- |

---

[53] <u>Id.</u>, pp. 13-14.

[54] <u>Id.</u>, pp. 16-17.

[55] <u>State v. Bruce</u>, 54 So.3d at 94-95.

| | |
|---|---|
| MS. GUSTE: | But Mr. Bruce, Mr. Bruce, you got one year hard labor at that time, correct? |
| MR. BRUCE: | That's why you said -- |
| MS. GUSTE: | No, sir. I'm asking you a question. You got one year hard labor at that time, am I correct? |
| MR. BRUCE: | Can I explain, ma'am? |
| MS. GUSTE: | I need you to answer that question. |
| MR. BRUCE: | Yes, ma'am. But can I explain -- |
| MS. GUSTE: | Okay. Can you get hard labor for a misdemeanor? |
| MR. BRUCE: | Excuse me, ma'am. You see, if I take the one year -- |
| THE COURT: | Let's just – wait, wait, stop. Let's just move on with the state. He's got a theft as well. |
| MS. GUSTE: | I understand, Your Honor. But he needs to understand from me, and I need it on the record, to protect the record, that he understands that he pled to a felony burglary in 2007. |
| THE COURT: | He pled to felony burglary, and he pled to a theft. |
| MS. GUSTE: | And you pled to a theft. |
| MR. BRUCE: | Yes.[56] |

The record clearly establishes that Bruce was properly identified as the person convicted of armed robbery and of the prior felony listed in the multiple offender bill. Bruce has presented <u>no</u> evidence, either then or now, that suggests any infringement of his rights or procedural irregularity in his prior guilty plea that might render his enhanced sentence unconstitutional. On the contrary, the certified records of his prior guilty plea establish its validity. Thus, Bruce has failed to show that the state courts' decisions were contrary to established federal law. He is not entitled to habeas relief on his due process claims related to his multiple offender adjudication.

---

[56] St. Rec. Vol. 2 of 4, Multiple Offender Hearing Transcript, pp. 14-16, 8/20/09.

As to the ineffective assistance aspect of this claim, Bruce has failed to establish either prong of the <u>Strickland</u> standard. His complaint that defense counsel performed "a perfunctory cross" of the State's fingerprint expert[57] fails to establish deficient performance. The transcript of the multiple offender hearing shows that after a few questions, it was clear that the fingerprint expert's testimony against Bruce was unassailable. Further questioning would have been futile. The in-court exchange between Bruce and his counsel quoted above, upon which Bruce bases much of this claim, amounts to nothing more than an acknowledgment of what the overwhelming evidence presented by the State unequivocally established: that Bruce's armed robbery conviction was his <u>second felony</u> conviction and that his earlier simple burglary guilty plea had been given with fully documented advice of rights, consequences (including that it could later be used against him to enhance any future sentence as an habitual offender) and waivers indicative of a knowing and voluntary plea.

During the multiple offender hearing, in response to the presiding judge's findings, Bruce himself clearly acknowledged that his prior guilty plea had been to <u>both</u> a theft charge <u>and</u> a felony burglary.[58] Nothing his counsel might have done differently could have overcome the truth and fact of Bruce's prior felony conviction. Bruce's self-serving statement that he thought he was pleading to a misdemeanor theft in 2007 is both

---

[57] Record Doc. No. 3 at p. 22 (Memorandum in Support at p. 22).

[58] <u>Id.</u> at p. 16.

contrary to the clear and fully documented record of his guilty plea and <u>un</u>supported by any corroborating evidence.  As the state appellate court correctly found, "Because defendant has not shown that he was prejudiced as a result of an alleged deficient performance by his attorney, this assignment of error . . . has no merit," and Bruce has failed to produce "affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of the [2007] plea."[59]  Because this finding is neither contrary to nor an unreasonable interpretation of Supreme Court precedent, this claim does not warrant federal habeas corpus relief.

V.       <u>SUFFICIENCY OF THE EVIDENCE (CLAIM  NO. 6)</u>

In his final claim, Bruce asserts that the evidence was insufficient to support his armed robbery conviction.  He argues that the testimony of the victim, Caraballo, was suspect and uncorroborated and that there was no independent evidence supporting the existence of the allegedly stolen property.  He also argues that there was no testimony specifically establishing force or intimidation and no weapon was recovered. Bruce contends that in light of these circumstances, any reasonable trier of fact would have grave doubts about his guilt.

Bruce asserted these arguments on direct appeal to the Louisiana Fifth Circuit, which found them meritless.  The appellate court thoroughly analyzed the claim and the elements of armed robbery under the standard of <u>Jackson v. Virginia</u>, 443 U.S. 307

---

[59] <u>State v. Bruce</u>, 54 So. 3d at 95.

(1979), relevant state case law and the evidence presented at trial. The court concluded that a rational trier of fact could have found guilt beyond a reasonable doubt. This was the last reasoned state court decision on the issue.

Jackson is the appropriate United States Supreme Court standard for consideration of a claim of insufficient evidence. Under Jackson, this court must determine, after viewing the evidence in the light most favorable to the prosecution, whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt. Id. at 319; Coleman v. Jackson, 132 S. Ct. 2060, 2062 (2012); Perez v. Cain, 529 F.3d 588, 594 (5th Cir. 2008); Williams v. Cain, 408 F. App'x 817, 821 (5th Cir. 2011). Thus, to determine whether the commission of a crime is adequately supported by the record, the court must review the substantive elements of the crime as defined by state law. Perez, 529 F.3d at 594 (citing Jackson, 443 U. S. at 324 n.16). The court's consideration of the sufficiency of the evidence extends only to what was presented at trial. See McDaniel v. Brown, 558 U.S. 120, 131, 134 (2010) (recognizing that a reviewing court is to consider the all of the trial evidence as a whole under Jackson); Johnson v. Cain, 347 F. App'x 89, 91 (5th Cir. 2009) (Jackson standard relies "upon the record evidence adduced at the trial.") (quoting Jackson, 443 U.S. at 324).

Review of the sufficiency of the evidence, however, does not include review of the weight of the evidence or the credibility of the witnesses, because those determinations are the exclusive province of the jury. United States v. Young, 107 F.

App'x 442, 443 (5th Cir. 2004) (citing <u>United States v. Garcia</u>, 995 F.2d 556, 561 (5th Cir. 1993); <u>see</u> <u>Jackson</u>, 443 U.S. at 319 (it is the jury's responsibility "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts"). A reviewing federal habeas court is <u>not</u> authorized to substitute its interpretation of the evidence or its view of the credibility of witnesses in place of the fact-finder. <u>Weeks v. Scott</u>, 55 F.3d 1059, 1062 (5th Cir. 1995); <u>Alexander v. McCotter</u>, 775 F.2d 595, 598 (5th Cir. 1985). Thus, all credibility choices and conflicting inferences must be resolved in favor of the verdict. <u>Ramirez v. Dretke</u>, 398 F.3d 691, 695 (5th Cir. 2005). In addition, "[t]he <u>Jackson</u> inquiry 'does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit.'" <u>Santellan v. Cockrell</u>, 271 F.3d 190, 193 (5th Cir. 2001) (quoting <u>Herrera v. Collins</u>, 506 U.S. 390, 402 (1993)).

A claim of insufficient evidence presents a mixed question of law and fact. <u>Perez</u>, 529 F.3d at 594; <u>Maes v. Thomas</u>, 46 F.3d 979, 988 (10th Cir. 1995). Therefore, this court must examine whether the state courts' denial of relief was contrary to or an unreasonable application of United States Supreme Court precedent as outlined in <u>Jackson</u>.

Louisiana law defines armed robbery as "the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon." La. Rev. Stat. § 14:

64(A); State v. Thomas, 13 So. 3d 603, 606 (La. App. 5th Cir. 2009).  To convict Bruce of armed robbery, the State was required to prove beyond a reasonable doubt all elements of the statute.  State v. Cotton, 646 So. 2d 1144, 1145-46 (La. App. 5th Cir. 2008). Under the Louisiana criminal code, anything of value "must be given the broadest possible construction, including any conceivable thing of the slightest value." La. Rev. Stat. § 14:2(A)(2).  A dangerous weapon is defined broadly as "any gas, liquid, or other substance or instrumentality, which in the manner used, is calculated or likely to produce death or great bodily harm."  Id. § 14:2(A)(3).

In addition to proving the elements of the crime, the State was also required to prove the defendant's identity as the perpetrator.  State v. Fuller, 980 So. 2d 45, 46 (La. App. 5th Cir. 2009).  In doing so, the "State is required to negate any reasonable probability of misidentification in order to carry its burden of proof."  Id. (citing State v. Ingram, 888 So. 2d 923, 926 (La. App. 5th Cir. 2004)).  Louisiana courts have held that a positive identification by one witness is enough to support a conviction of armed robbery.  Id.  Discrepancies in witness testimony go to credibility, which is a matter left to the judgment of the trier of fact, and an appellate court cannot reassess a credibility determination.  State v. Thomas, 13 So. 2d 45, 46 (La. App. 5th Cir. 2008).

In considering whether a weapon is dangerous, Louisiana courts look not only at the inherent danger a weapon possesses, but also at whether an object could be used in a way to cause violence or great bodily harm. See Cotton, 646 So. 2d at 1145-46

(explaining that Louisiana courts have found a wide variety of objects to be dangerous weapons including an ink pen, liquor bottle, and a metal post sign). It is not necessary to produce a weapon to support an armed robbery conviction "where the state's witnesses can establish, through their observations at the crime scene, all the elements of the charge beyond a reasonable doubt, including the existence and use of a dangerous weapon." Id. at 1146; accord State v. Brown, 591 So. 2d 791, 794 (La. App. 5th Cir. 1991). Where a perpetrator has created an "atmosphere of intimidation prompting the victim to reasonably react with fear for his life, an armed robbery conviction is justified." Cotton, 646 So. 2d at 1146. Louisiana courts have held that a verbal threat is not necessary to prove force or intimidation. State v. Billard, 852 So. 2d 1069, 1076 (La. App. 5th Cir. 2003) (citing State v. Wickem, 759 So. 2d 961, 965 (La. App. 5th Cir. 2000)).

It is also unnecessary to produce the stolen items to support an armed robbery conviction. State v. Glover, 754 So. 2d 1044, 1048 (La. App. 1st Cir. 1999); see Wickem, 759 So. 2d at 968 ( "It is settled that the production of a weapon or other physical evidence is not required as long as the state can establish all of the elements of armed robbery beyond a reasonable doubt through the testimony of its witnesses").

At trial in Bruce's case, the jury heard testimony from the victim, Caraballo, and several Jefferson Parish Sheriff's Office employees, concerning the robbery which took place at Caraballo's apartment in Bridge City.[60] The testimony established that, on

---

[60] St. Rec. Vol. 2 of 4, Trial Transcript, pp. 85-152.

June 10, 2009, Caraballo was in his apartment getting ready to go out, while his two roommates where showering, when he walked from the kitchen to the living room and found an intruder in the doorway.[61] The intruder pulled out a medium-sized kitchen knife, which prompted Caraballo to drop his large gold Jesus chain, which he testified had cost him $ 1,600.00, and run away.[62] At trial, Caraballo testified that he was scared when he saw the robber approach him and that he fell backwards at the same time as the perpetrator grabbed his chain.[63] Immediately after the robbery, Caraballo and his roommates left their apartment to look for the robber.[64] After their search turned up nothing, they called the police.[65]

Deputy Mark Monson, who was working the district that covers Bridge City and Avondale, responded to the call at Caraballo's apartment.[66] Caraballo informed Deputy Monson that he had been robbed at knife point and referred to his robber by name as "Tony."[67] Caraballo testified that he was not personally acquainted with Tony, but that

---

[61] Id., p. 114-116 (Caraballo).

[62] Id. p. 115, 17 (Caraballo).

[63] Id. p. 118 (Caraballo).

[64] Id. p. 114-15 (Caraballo).

[65] Id. p. 115 (Caraballo).

[66] Id. p. 102-04 (Monson).

[67] Id. p. 104-05 (Monson).

he had seen his face around the neighborhood.[68]  Deputy Monson frequently worked in

the area, was familiar with Bruce, and knew he went by the name Tony in that area.[69]

Deputy Monson took Caraballo's written statement, in which he described the intruder

as a black male wearing a black tee-shirt, and focused on Bruce as a person of interest.[70]

The next morning, on January 11th, while patrolling the Avondale area, Deputy

Daniel Spears found Bruce suspiciously lurking behind a dumpster at approximately 3:40

a.m.[71]  After running his name for warrants and finding two outstanding attachments,

Deputy Spears placed Bruce under arrest.[72]  Deputy Spears testified he did not find any

gold chains or medallions on Bruce, but described him as wearing a long sleeved black

shirt, a black knit hat and dark pants.[73] Later that day, Deputy Monson compiled a

photographic lineup with a picture of Bruce and five other males with similar

characteristics.[74]  Caraballo positively identified Bruce as the robber from the

photographic lineup that evening.[75]  At trial, Caraballo testified that he had no doubts that

---

[68] Id. p. 119-120 (Caraballo).

[69] Id. p. 105 (Monson).

[70] St. Rec. Vol. 2 of 4, Trial Transcript (Monson); St. Rec. Vol. 4 of 4. State Exhibit 3.

[71] St. Rec. Vol. 2 of 4, Trial Transcript, p. 89 (Spears).

[72] Id. at p. 90 (Spears).

[73] Id. at pp. 90-91 (Spears).

[74] Id. p. 106 (Monson); p. 118 (Caraballo).

[75] Id. (Monson).

Bruce was the individual who entered his apartment with a knife, and he had no reason to say something that was not true about Bruce.[76]

Detective A.J. Thibodeaux testified that he had applied for a search warrant to obtain two articles of clothing which belonged to Bruce and were taken from him after he was booked at the Jefferson Parish Correctional Center.[77]  Detective Thibodeaux described State's Exhibits 1 and 2 as a black knit cap and a long sleeved black shirt with white writing on the sleeves.[78] After viewing Exhibits 1 and 2, Deputy Spears testified that the items appeared to be the clothing worn by Bruce on the morning he was arrested.[79]  Similarly, Caraballo, after viewing the evidence presented by the State, responded that it appeared to be the clothing worn by the robber.[80]

Thus, the jury was presented with evidence that a man matching Bruce's description entered Caraballo's apartment with a knife, came at him and stole his valuable gold chain.  Caraballo testified that he was afraid when he ran, that he knew the man who robbed him, and that the man was known in the neighborhood as Tony.  The State presented evidence that the man who robbed Caraballo, known to him as Tony, was Lawrence Bruce.  Deputy Monson testified that he knew Tony as Lawrence Bruce

---

[76] Id. p. 119 (Caraballo).

[77] Id. at pp. 97-98 (Thibodeaux).

[78] Id. at p. 99 (Thibodeaux).

[79] Id. at p. 90 (Spears).

[80] Id. at p. 123 (Caraballo).

because he frequently patrolled the area in which Tony moved. Caraballo positively identified Bruce as the man who robbed him through a photographic line-up and testified that he had no doubt that Bruce was the man who entered his apartment and robbed him. In addition, Deputy Spears identified the clothes presented by the State in evidence as those worn by Bruce on the morning of his arrest, and Caraballo identified the same clothes as those worn by his assailant.

Based on the foregoing evidence, a reasonable jury could easily have found that Lawrence Bruce was the intruder who entered Caraballo's house on June 10, 2009, and robbed him at knife-point. The jury was well within its authority to make credibility determinations as to the testimony of Caraballo and the two Jefferson Parish sheriff's deputies. It is not for this court, on federal habeas review, to reevaluate the credibility of witness statements or the weight of the evidence or to substitute its own judgment for the jury's as to a function committed to the jury, whose fact-finding must be given deference. Considering the evidence in the light most favorable to the prosecution, it was rational and reasonable for the jury to have found that all essential elements of armed robbery were proven beyond a reasonable doubt. The state courts' denial of relief on this claim was not contrary to or an unreasonable application of <u>Jackson</u>. Bruce is not entitled to relief on this claim.

## RECOMMENDATION

For the foregoing reasons, it is **RECOMMENDED** that Bruce's petition for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[81]

New Orleans, Louisiana, this ____12th____ day of September, 2014.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[81] Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.